UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ELIZABETH A. VYKOPAL,            )
                                 )
         Plaintiff,              )   Case No. 1:14-cv-521
                                 )
v.                               )   Honorable Paul L. Maloney
                                 )
COMMISSIONER OF                  )
SOCIAL SECURITY,                 )
                                 )
         Defendant.              )
_____)

## OPINION

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits. On August 29, 2012, plaintiff filed her application for SSI benefits. She initially alleged an April 4, 2009, onset of disability. She later amended her claim to allege an August 29, 2012, onset of disability[1] (Page ID 45, 58, 211-17). Her claim was denied on initial review. (Page ID 138-48). On October 22, 2013, she received a hearing before an administrative law

---

[1]Administrative *res judicata* arising from a decision dated May 23, 2011 (Page ID 121-32), barred any onset of disability date before May 24, 2011. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for benefits is filed. Thus, September 2012 is plaintiff's earliest possible entitlement to SSI benefits.

judge (ALJ) at which she was represented by counsel. (Page ID 55-78). On November 22, 2013, the ALJ issued his decision finding that plaintiff was not disabled. (Page ID 39-48). On April 18, 2014, the Appeals Council denied review (Page ID 30-32), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. She asks the Court to overturn the Commissioner's decision on the following grounds:

1. The ALJ ignored the medical source statement of plaintiff's treating orthopedic specialist.

2. The ALJ ignored the opinion offered by plaintiff's treating physician's assistant.

3. The ALJ mischaracterized the evidence.[2]

(Plf. Brief at 1, Page ID 583).

The Court finds a violation of plaintiff's procedural right to "good reasons" recognized by the Sixth Circuit stemming from the ALJ's failure to mention Dr. Kapteyn in his opinion combined with the ALJ's failure to address functional restrictions that Dr. Kapteyn suggested regarding bending and twisting.[3]

---

[2] All three issues are presented in the body of plaintiff's brief under a general heading that the ALJ failed to properly weigh the medical source opinion evidence under 20 C.F.R. § 416.927(c). (Plf. Brief at 9-15, Page ID 591-97).

[3] Plaintiff's counsel never raised with the ALJ that Dr. Kapteyn was a treating physician, nor did he point out that the doctor had suggested functional restrictions beyond the RFC that had been determined in a denial of plaintiff's earlier claim for SSI benefits. The Sixth Circuit's jurisprudence regarding the "good reasons" requirement has not yet defined the point at which a plaintiff loses her procedural entitlement to "good reasons" by her attorney's failure to raise an issue for the ALJ's consideration.

The Commissioner's decision will be vacated and the matter will be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g).

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of

whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after August 29, 2012, the date she filed her application for SSI benefits. (Op. at 3, Page ID 41). Plaintiff had the severe impairment of degenerative disc disease of her lumbar and cervical spine. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 5, Page ID 43). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following limitations: she must have the ability to use a cane in the right upper extremity while ambulating; she requires a sit stand option; she can occasionally climb
>
> ramps and stairs, but never ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, and crouch; and, never crawl.

(Op. at 5, Page ID 43). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (*Id.* at 5-9, Page ID 43-47).

Plaintiff had no past relevant work. (*Id.* at 9, Page ID 47). She was 51-years-old on the date she filed her application for SSI benefits. She was classified as an individual closely approaching advanced age at all times relevant to her claim.[4] (*Id.*). Plaintiff has at least a high-school education and is able to communicate in English. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 8,500 jobs in Michigan that the hypothetical person would be capable of performing. (Page ID 75-76). The ALJ found that this constituted a significant number of jobs. Using "Rule 202.20 and Rule 202.13"[5] of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op. at 9-10, Page ID 47-48).

---

[4] Plaintiff was 51 years old on the date she filed her application for SSI benefits. She was a person closely approaching advanced age (age 50-54) at all times relevant to her claim for SSI benefits. *See* 20 C.F.R. § 416.963(d). The ALJ incorrectly stated that plaintiff was classified as a "younger individual" when she filed her application, and that she "subsequently changed age category." (Op. at 9, Page ID 47).

[5] The ALJ's reference to Rule 202.20 was harmless error. Rule 202.20 applies to a "younger individual." As noted in footnote 3, plaintiff was classified as an individual closely approaching advanced age at all times relevant to her claim for SSI benefits. Rule 202.13 applies to a person closely approaching advanced age and when used as a framework supports the ALJ's decision finding that plaintiff was not disabled.

1.

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of a treating physician, Reginald Kapteyn, D.O., of Orthopaedic Associates of Muskegon. In response to the ALJ's questions regarding being seen at Orthopaedic Associates, plaintiff testified that four years earlier she had received an injection, experienced a "bad reaction," and never went back. (Page ID 64). She stated that Orthopaedic Associates was "trying to treat [her] again" and that she saw Dr. Captain [sic]." (*Id.*). Plaintiff's attorney elected not to elicit any testimony from plaintiff regarding treatment provided by Dr. Kapteyn, nor did he offer any argument at the hearing or in his prehearing brief suggesting that any opinion expressed by Dr. Kapteyn was particularly significant. (Page ID 62-70, 73, 77-78). Further, plaintiff's attorney did not pose any hypothetical question to the VE based on any limitation suggested by Dr. Kapteyn which may have indicated that plaintiff was not capable of performing the jobs that the VE had identified in response to the ALJ's questions. (Page ID 76-78).

It is undisputed that plaintiff saw Dr. Kapteyn on three occasions: June 25, August 1, and September 13, 2013. (Plf. Brief at 5-6, Page ID 587-88; Def. Brief at 6, Page ID 603; Exhibits B12F/1-3, 17F/1, Page ID 515-17, 572). These visits consisted of an initial intake, an EMG test, and a visit in which Dr. Kapteyn proposed treatment options and refused to make any general functional assessment until after plaintiff had completed "some treatment" to try to improve the overall symptoms. The ALJ

considered all this evidence. (*See* Op. at 7-8, Page ID 45-46) (citing Exhibit B12F/1, 3; 17F/1, found in the administrative record at Page ID 515, 517, 572).

On June 25, 2013, Dr. Kapteyn performed an initial examination. (Page ID 516-17). Plaintiff's neck showed "mild restriction of flexion and extension and bilateral rotation to about 60 degrees." Her motor exam was "non-focal with 5/5 deltoid biceps, triceps, wrist extensors and interosseous muscles." She had a mild decrease in the range of motion in her lumbar spine. Her straight leg raising tests were negative bilaterally. Dr. Kapteyn scheduled an EMG test to further assess plaintiff's condition. (*Id.*). On August 1, 2013, Dr. Kapteyn conducted an electrodiagnostic examination. The ALJ noted that plaintiff's EMG "revealed mild bilateral lower extremity radiculopathy, but no evidence of myopathy, plexopathy, or mononeuropathy." (Op. at 7, Page ID 45) (citing Ex. B12F/1, found at Page ID 515).

On September 13, 2013, plaintiff returned to Dr. Kapteyn and asked him about "[d]isability ratings." (Page ID 572). Low back and leg pain remained her primary complaints. Plaintiff's motor exam was nonfocal. She had mildly positive bilateral straight leg raising tests and moderate stiffness in her lower back. She had "moderately decreased lumbar flexion/extension and bilateral side bending." (*Id.*). Dr. Kapteyn offered a diagnosis of multilevel lumbar spine disease, single level cervical spine disease, and myofascial lumbar pain. He recommended various forms of follow-up care. These included a back exercise handbook and direction to stop smoking

cigarettes.[6] He stated that plaintiff would certainly have "some difficulty with any significant bending, lifting, twisting activities." (*Id.*). Dr. Kapteyn refused to make any general functional assessment until plaintiff had "complet[ed] some treatment to try to improve the overall symptoms." (*Id.*).

Plaintiff argues that the ALJ erred by not finding that Dr. Kapteyn was a treating physician. This is a close question. On the present record, if the ALJ's opinion had mentioned Dr. Kapteyn by name and made a finding that Dr. Kapteyn was not a treating physician, such a finding would have been supported by substantial evidence. It is well established that a single examination does not suffice to create a treating relationship. *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006). "Indeed, depending on the circumstances and nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 167 F. App'x at 506-07; *see Helm v. Commissioner*, 405 F. App'x 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a nontreating (but examining) source.") (citing *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007)). Dr. Kapteyn conducted an initial intake, an EMG test, and on a third visit proposed treatment options and refused to make any general functional assessment until after

---

[6]There is nothing in the record indicating that plaintiff followed through with Dr. Kapteyn's treatment recommendations. Plaintiff's hearing was held on October 22, 2013, and plaintiff's attorney did not ask to keep the record open to allow him to provide more recent records from Dr. Kapteyn. (Page ID 58, 77-78). He did not attempt to supplement the record at any time between the hearing date and November 22, 2013, the date of the ALJ's decision.

plaintiff had completed "some treatment." The problem with the ALJ's opinion is that it contains no finding regarding whether Dr. Kapteyn was a treating physician or merely an examining physician. Moreover, it contains no discussion addressing Dr. Kapteyn's statement that plaintiff would certainly have "some difficulty with any significant bending, lifting, twisting activities." (Page ID 572).

Plaintiff argues that the ALJ's decision should be overturned because he "failed to even acknowledge" the September 2013 examination by Dr. Kapteyn. (Plf. Brief at 10, Page ID 592). It is pellucid that the ALJ did consider the results of the September 13, 2013 examination:

> In August 2013, an EMG was performed, which revealed mild bilateral lower extremity radiculopathy, but no evidence of myopathy, plexopathy, or mononeuropathy (Exhibit B12F/1). One month later, her motor exam was non-focal. She had only mildly positive straight leg raise test. She also had moderate stiffness and moderately decreased lumbar flexion/extension and bilateral side bending. (Ex. 17F/1).

(Op. at 7-8, Page ID 45-46). Further, plaintiff ignores the portion of the September 13, 2013, progress note where Dr. Kapteyn refused to provide a general functional assessment until after plaintiff had completed "some treatment." (Page ID 572). Plaintiff emphasizes only the portion of the progress note suggesting that plaintiff would have "some difficulty" with any significant bending, lifting, twisting activities. (Plf. Brief at 10, Page ID 537).

The Court does not agree with plaintiff's assertion that Dr. Kapteyn's suggestion that plaintiff would have "some difficulty" was not considered by the ALJ. (Plf. Brief 10, Page ID 593). RFC is the most, not the least, a claimant can do despite her

impairments. 20 C.F.R. § 416.945(a)(1); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ was not provided with evidence indicating that a person with "some difficulty" in the areas indicated would be unable to perform the limited range of light work indicated in the ALJ's factual finding regarding plaintiff's RFC.[7] Further, at the outset of his opinion, the ALJ explained that the RFC from the May 2011 decision denying plaintiff's earlier application for SSI benefits, in which plaintiff retained a limited range of light work, was being adopted because plaintiff had not shown that there was a material change in her condition. (Op. at 1, Page ID 39). The ALJ's finding regarding plaintiff's RFC included restrictions on lifting, stooping, and crouching. (Op. at 5, Page ID 43). Nonetheless, the ALJ's opinion is devoid of any analysis with respect to Dr. Kapteyn's statements regarding limitations on bending and twisting.

Defendant argues that to the extent that the ALJ erred in not explicitly providing "good reasons" for his evaluation of Dr. Kapteyn's opinion, the error was harmless. (Def. Brief at 6, Page ID 603; Def. Surreply Brief at 4, Page ID 639). The Sixth Circuit recognizes a procedural right to "good reasons" for discounting a treating physician's medical opinion. *See Rogers v. Commissioner*, 486 F.3d 234, 242 (6th Cir. 2007). "[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent

---

[7]The ALJ noted that his RFC assessment was not based on plaintiff being pain free. (Op. at 9, Page ID 47). *See Pavlica v. Commissioner*, No. 13-13187, 2014 WL 988959, at * 8 (E.D. Mich. Mar. 13, 2014).

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*; *see Shilo v. Commissioner*, 600 F. App'x 956, 959 (6th Cir. 2015) ("[W]e will not hesitate to remand a Commissioner's opinion that fails to articulate 'good reasons' for not crediting the opinion of a treating physician."). "[A] violation of the good reasons rule can be deemed to be 'harmless error' if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § [416.927(c)(2)] ... even though she has not complied with the terms of the regulation." *Cole v. Commissioner*, 661 F.3d 931, 940 (6th Cir. 2011).

No party has suggested that the first exception applies. Defendant's attempt to fit under the second exception is not persuasive. The ALJ did not make findings consistent with Dr. Kapteyn's opinions because the RFC finding did not include any significant restrictions on bending and twisting or an explanation regarding how those restrictions had been taken into account. Defendant did not develop any argument with regard to third exception.[8]

---

[8]"In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments. *Nelson v. Commissioner*, 195 F. App'x. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 F. App'x. 456, 464 (6th Cir. 2006). Thus, the procedural rule is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend v. Commissioner*, 375 F. App'x 543, 551 (6th Cir. 2010).

The Court finds a violation of plaintiff's procedural right to "good reasons" and that the error is not harmless. The Commissioner's decision will be vacated and the matter remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

**2.**

Physician's Assistant Roberto Miller was plaintiff's primary care provider. (Page ID 63). Plaintiff argues that the "good reasons" requirement applied to Mr. Miller's opinions because Michigan law defines a physician's assistant as the agent of his or her supervising physician. (Reply Brief at 3-4, Page ID 625-26). This argument is innovative, but meritless. Federal law defines acceptable medical sources and the scope of the procedural right to "good reasons" under 20 C.F.R. § 416.927(c)(2). A physician's assistant is not an acceptable medical source. *See* 20 C.F.R. 416.913(a), (d)(1); *see also Engebrecht v. Commissioner*, 572 F. App'x 392, 397-98 (6th Cir. 2014); *see also Jones v. Colvin*, No. 7-14-cv-36, 2014 WL 4716517, at * 4 (E.D. Ky. Sept. 22, 2014) ("The Social Security regulations make clear that physician's assistants are not 'acceptable medical sources, but rather 'other sources[.]'"). Because Mr. Miller was not an acceptable medical source, the ALJ was not required to provide "good reasons" for the weight given to Miller's opinions under 20 C.F.R. § 416.927(c)(2). *See, e.g.*, *Hughes v. Commissioner*, No. 1:11-cv-66, 2015 WL 4076931, at * 8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14-cv-213, 2015 WL 350617, at * 6 (S.D. Ohio Jan. 26, 2015) (collecting cases); *Borden v. Commissioner*, 1:13-cv-2211, 2014 WL 7335176, at * 9 (N.D. Ohio Dec. 19, 2014) ("Other source opinions are "neither entitled to controlling

weight, nor subject to the 'good reasons' requirement of the treating physician rule.").

**3.**

Plaintiff's third claim of error is that the ALJ mischaracterized the evidence when weighing the medical opinions of record. Specifically, plaintiff argues that she claimed significant limitations in her daily activities and the ALJ should not have considered those activities as undermining the RFC restrictions suggested by Physician's Assistant Miller. (Plf. Brief at 12-14, Page ID 594-96). The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the Court's judgment for that of the ALJ. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

The ALJ's decision provides an accurate summary of the administrative record and plaintiff's testimony. The ALJ found that plaintiff's testimony was not fully credible. (Op. at 6-9, Page ID 44-47). Further, the ALJ found that Mr. Miller's RFC questionnaire responses were entitled to little weight.[9] Among other things, Mr. Miller asserted that plaintiff could "never" stand or walk and "never" lift any weight. (Page

---

[9] Plaintiff cannot transform Mr. Miller's RFC questionnaire responses into treating physician opinions by the mere addition of a doctor's signature. Plaintiff asserts that the signature at the end of the form in question belongs to Jocelyn Pouliot, M.D. (Plf. Brief at 6, Page ID 588). There is no record of treatment by Dr. Pouliot.

ID 575).  The ALJ found that the extreme restrictions that Mr. Miller suggested could not be reconciled with plaintiff's activities.  (Op. at 8, Page ID 46).  The Court finds no error.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be vacated and the matter will be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.


Dated:   September 22, 2015            /s/ Paul L. Maloney
                                                                          Paul L. Maloney
                                                                          United States District Judge